UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Andrew Hall,
       Plaintiff

       v.                          Case No. 16-cv-418-SM
                                   Opinion No. 2017 DNH 110
Lorettann Gascard and
Nikolas Gascard,
       Defendants


                    **O R D E R**


       Plaintiff, Andrew Hall is an art collector.  He collects

both post-war and contemporary art.  Over a two-year period

beginning in 2009, he purchased twenty-four works of art from

the defendants, Lorettann Gascard and her son, Nikolas Gascard.

Hall says he purchased some of those pieces directly from the

Gascards, while others were purchased indirectly through auction

houses to which the Gascards had consigned the works.  And, says

Hall, the Gascards affirmatively represented that each of the

twenty-four works he purchased were original pieces produced by

the American artist Leon Golub.  In early 2015, however, Hall

discovered that those twenty-four works are forgeries.


       In this action, Hall advances six common law and statutory

claims against the Gascards.  The Gascards move the court to

dismiss each of those claims, asserting that none states a
viable cause of action.  See generally Fed. R. Civ. P. 12(b)(6).
For the reasons discussed, that motion is granted in part and
denied in part.


**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the court must "accept as true all well-pleaded facts
set out in the complaint and indulge all reasonable inferences
in favor of the pleader."  SEC v. Tambone, 597 F.3d 436, 441
(1st Cir. 2010).  Although the complaint need only contain "a
short and plain statement of the claim showing that the pleader
is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege
each of the essential elements of a viable cause of action and
"contain sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face," Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (citation and internal
punctuation omitted).


In other words, "a plaintiff's obligation to provide the
'grounds' of his 'entitlement to relief' requires more than
labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do."  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007).  Instead, the facts alleged

in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." Id. at 570. If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Tambone, 597 F.3d at 442.

As to his fraud claim, Hall must meet the heightened pleading standard imposed by Federal Rule 9(b), which provides that when alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That means the complaint must, at a minimum, allege "the identity of the person who made the fraudulent statement, the time, place, and content of the misrepresentation, the resulting injury, and the method by which the misrepresentation was communicated." Clearview Software Int'l Inc. v. Ware, 2009 WL 2151017, at *1, n. 3 (D.N.H. July 15, 2009) (quotation omitted). See also Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) ("This heightened pleading standard is satisfied by an averment of the who, what, where, and when of the allegedly false or fraudulent representation.") (citation and internal punctuation omitted).

## Background

Accepting the allegations of Hall's complaint as true - as the court must at this juncture - the relevant factual background is as follows. Beginning in approximately 1998 and until quite recently, Lorettann Gascard was a professor of art history and fine arts at Franklin Pierce University, where she also served as the university's art historian and the director of its art gallery (the Thoreau Art Gallery at Franklin Pierce University). She is "also an artist in her own right." Complaint (document no. 1-4) at para. 3. See also Gascard v. Franklin Pierce Univ., 2015 WL 1097485 at *1, 2015 DNH 49, at 3 (D.N.H. March 11, 2015). Nikolas Gascard is her adult son.

Leon Golub was an American artist who died in 2004. According to the complaint, "Golub's work has been featured in numerous solo exhibitions throughout the United States and abroad," Complaint at para. 7, and his work "has long been represented in many of the world's most important art museums and public art collections, among them, the Metropolitan Museum of Art, the Art Institute of Chicago, the Israel Museum, the Boston Museum of Fine Arts, the Carnegie Museum of Art, the Corcoran Gallery of Art, the Fogg Museum at Harvard University, the Tate Modern, and the Whitney Museum of American Art." Id. at para. 8. Hall says that in 2003, shortly before Golub died,

he began acquiring Golub's works from a variety of sources.  By 2009, he had acquired approximately forty paintings and drawings by the artist.  And, from September of 2009 through approximately November of 2011, Hall says he acquired an additional twenty-four works of art either directly or indirectly through the Gascards, all of which were represented to have been original works produced by Golub.  Specifically, Hall alleges the following:

> On September 23, 2009, he purchased a painting called "Untitled" from Christie's New York Auction House for $47,000, which he says was consigned by one or both of the Gascards, who represented it was an original work by Golub which they had acquired directly from the artist.

> In March of 2010, Hall acquired three more works from Christie's New York for $75,000, each of which he says was consigned by one or both of the Gascards, who represented to Christie's that they were original pieces by Golub.

> In September of 2010, Hall acquired another work purportedly painted by Golub, this time from Sotheby's and at a cost of $31,250.  Again, he says the work was consigned by one or both of the Gascards, who represented that it was an original work by Golub.

> In March of 2011, Hall acquired two more works from Christie's, at a cost of $53,750.  He claims those works were consigned by one or both of the Gascards, who represented that they were original works by Golub.

> Around the same time, Hall says he was in direct contact with the Gascards after learning that they had listed another ostensible Golub work on an online auction house.  In that transaction, Hall acquired

another work he says the Gascards represented was an
original Golub, at a cost of $28,750.

Following that transaction, Hall says Nikolas Gascard
informed him that his mother, Lorettann Gascard, had a
collection of Golub works that the Gascards wished to
sell.  Nikolas also offered to sell a number of
ostensible Golub works from his own collection as
well.

In March of 2011, Hall acquired ten works from Nikolas
Gascard's collection, each of which was represented to
be an original piece by Golub, for a total purchase
price of $275,000.

In October of 2011, Hall says Nikolas Gascard brokered
a sale of six more alleged original Golub works from
Lorettann Gascard, for a total purchase price of
$165,000.

Complaint at paras. 10-17.


Hall alleges that, beginning in February of 2015, he began

to discover that the pieces he purchased from the Gascards,

whether directly or indirectly, are not original works by Golub.

Instead, he says, all are clever forgeries.  As to each of the

transactions described in the complaint and summarized above,

Hall alleges that one or both of the Gascards knowingly made

false statements (either directly to Hall or to the auction

house) about the particular work's provenance, and falsely

represented that each of the paintings Hall purchased was an

original painting by Golub when, in fact, the Gascards knew that

those paintings were forgeries.  See, e.g., Id. at paras 1, 10,

and 30.  And, says Hall, he would not have purchased any of the works at issue in this case had he known that it was a forgery. In other words, the "authenticity of each of the Challenged Works was clearly material to Hall's decision to purchase each one."  <u>Id</u>. at para. 31.

In September of 2016, Hall filed this action against the Gascards.[1]  In his complaint, he advances six claims: fraud (count one); conspiracy to defraud (count two); breach of common law and statutory warranties (count three); breach of contract (count four); unjust enrichment (count five); and unfair and deceptive trade practices, in violation of New Hampshire's Consumer Protection Act (count six).  As noted above, the Gascards move to dismiss all claims, asserting that none states a viable cause of action.  <u>See generally</u> Fed. R. Civ. P. 12(b)(6).  Hall objects.

---

[1]    Hall has represented to the court that, after filing this action against the Gascards, he reached settlements with both Christie's and Sotheby's.  Pursuant to the latter, Sotheby's cancelled its sale to Hall and refunded the entire purchase price.  With respect to the six purchases made through Christie's, Hall says Christie's has agreed "to a substantial, but not complete refund of the [total purchase] price." Defendant's Memorandum in Opposition to Dismissal (document no. 10-1) at 12 n.3.  So, as to those transactions, Hall seeks damages from the Gascards "to the extent his settlement with Christie's did not make him completely whole for the price he paid for [those six] fake Golub works."  <u>Id</u>.

**Discussion**

I.   <u>All Claims Involving Sotheby's and Christie's</u>.

     The Gascards first move to dismiss all of Hall's claims
that relate to the purchases he made through Christie's and
Sotheby's, asserting that: (1) the complaint fails to adequately
allege that the works purchased through those auction houses
were actually consigned by defendants; and (2) the complaint
fails to allege with sufficient specificity which of the two
defendants made the allegedly false statements to the auction
houses about the various works' provenance.  In particular,
defendants seem to believe that because some of the factual
allegations in Hall's complaint are based upon "information and
belief," the complaint fails to adequately plead a viable claim
for relief.  The court disagrees.


     Viewed in its entirety, the complaint adequately and
plausibly alleges that the works at issue originated with
defendants and that defendants knowingly made false statements
about the provenance and authenticity of those works.  <u>See</u>
<u>generally</u> <u>Iqbal</u>, 556 U.S. at 678.  And, the fact that some of
the complaint's factual allegations are made upon "information
and belief" does not render Hall's claims, when viewed in their
entirety, legally insufficient.  Indeed, as required, the
complaint adequately sets forth supporting facts sufficient to

demonstrate the basis upon which the "information and belief" is
founded.  See, e.g., Rodriguez-Ortiz v. Margo Caribe, Inc., 490
F.3d 92, 96 (1st Cir. 2007) (noting that, under the PLSRA,
"if an allegation regarding the [fraudulent] statement or
omission is made on information and belief, the complaint shall
state with particularity all facts on which that belief is
formed," and also noting that those pleading requirements are
"congruent and consistent with pre-existing standards of this
circuit under Rule 9(b)").  See also Aldridge v. A.T. Cross
Corp., 284 F.3d 72, 78 (1st Cir. 2002) ("[We have previously
held] that the PSLRA did not alter this circuit's rigorous
reading of the standards for pleading fraud [under Rule 9(b)].
The plaintiff in a securities fraud action must specify each
allegedly misleading statement or omission including its time,
place and content.  The plaintiff must provide factual support
for the claim that the statements or omissions were fraudulent,
that is, facts that show exactly why the statements or omissions
were misleading.  If the plaintiff brings his claims on
information and belief, he must set forth the source of the
information and the reasons for the belief.") (citations and
internal punctuation omitted).

II. __Count One - Fraud__.

Next, defendants move to dismiss Hall's fraud claim on
grounds that the complaint fails to adequately allege that
Hall's reliance on the false statements attributed to the
Gascards was "justifiable."  In short, the Gascards seem to
suggest that because Hall was a sophisticated purchaser of
Golub's work, he was not entitled to rely upon their allegedly
false assurances that the works at issue were genuine pieces
painted by Golub.  Instead, say the Gascards, Hall was required
to independently verify the authenticity of the works prior to
purchasing them.  And, having failed to do so, he must bear the
consequences of that failure and accept the fact that he paid
several hundred thousand dollars for twenty-four clever
forgeries.

Assuming for the moment that Hall had some duty to verify
the accuracy of the representations of authenticity, even the
cases upon which the Gascards rely suggest that the
reasonableness of a party's reliance is a factual question.  __See__
Defendant's Memorandum (document no. 7 at 9) (citing __ACA__
__Galleries, Inc. v. Kinney__, 928 F. Supp. 2d 699, (S.D.N.Y.
2013)).  __See also__ __Rodi v. S. New England Sch. of Law__, 532 F.3d
11, 15 (1st Cir. 2008) (noting that "the reasonableness of a
party's reliance is ordinarily a question of fact for the jury,"

but acknowledging that it is an issue that, under certain circumstances, could be resolved on summary judgment).

Whether the "reasonableness" of Hall's reliance on the false statements attributed to the Gascards can be resolved on summary judgment is, at this juncture, unclear. It is, however, plain that the grounds advanced by the Gascards do not support dismissal of Hall's fraud claim under Rule 12(b)(6).

The Gascards also assert that Hall's fraud claim is barred by the economic loss doctrine. Generally speaking, the economic loss doctrine operates "to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." Plourde Sand & Gravel Co. v. JGI Eastern, Inc., 154 N.H. 791, 794 (2007). See also Wyle v. Lees, 162 N.H. 406, 412 (2011) (noting that the economic loss doctrine precludes claims that "merely relate to a breached promise to perform the terms of the contract or attempt to recharacterize a breach of contract claim as a negligent misrepresentation claim."). In simpler terms, "[a] plaintiff cannot recover damages in tort for a negligently performed contract." Androscoggin Valley Reg'l Refuse Disposal Dist. v. R.H. White Constr. Co., 2017 WL 1906612 at *4, 2017 DNH 93 (D.N.H. May 8, 2017).

There is, however, an exception to the economic loss
doctrine that permits a plaintiff to recover in tort for
misrepresentations, unrelated to any material terms of the
contract, that induced him or her to enter into the agreement.
As the New Hampshire Supreme Court has noted,

> Where a negligence claim is based only on breach of a
> contractual duty, the law of contract rightly does not
> punish the breaching party, but limits the breaching
> party's liability to damages that naturally flow from
> the breach.  It is an altogether different situation
> where it appears two parties have in good faith
> entered into a contract but, in actuality, one party
> has deliberately made material false representations
> of past or present fact, has intentionally failed to
> disclose a material past or present fact, or has
> negligently given false information with knowledge
> that the other party would act in reliance on that
> information in a business transaction with a third
> party.  The breaching party in this latter situation
> also is a tortfeasor and may not utilize the law of
> contract to shield liability in tort for the party's
> deliberate or negligent misrepresentations.

Wyle v. Lees, 162 N.H. at 411 (quoting United Int'l Holdings,
Inc. v. Wharf (Holdings), Inc., 210 F.3d 1207, 1226-27 (10th
Cir. 2000) (emphasis in original).[2]

---

[2]    In Wharf, the Court of Appeals for the Tenth Circuit went
on to note that, "A negligent misrepresentation claim is based
not on a contractual duty but on an independent common law duty
requiring a party, in the course of business, to exercise
reasonable care or competence in obtaining or communicating
information on which other parties may justifiably rely.
Consequently, the economic loss rule does not bar [a
plaintiff's] negligent misrepresentation claim." Wharf, 210
F.3d at 1227.  See also Schaefer v. Indymac Mortg. Servs., 731

So it is in this case - at least according to the
allegations set forth in Hall's complaint.  The Gascards
knowingly and intentionally provided false information (both
directly to Hall and indirectly, through a third party) about
material matters (i.e., the various works' provenance) in an
effort to fraudulently induce Hall to enter into various
contracts to purchase what he thought were original works of art
by Golub.  The fraudulent statements preceded contract formation
and were (allegedly) uttered for the very purpose of inducing
Hall to enter into the contracts.  Under the facts as pled,
Hall's fraud claim is not barred by the economic loss doctrine.
See, e.g., Wyle, 162 N.H. at 411 ("In other words, where the
misrepresentation of present fact serves as an inducement for
the contract, it is not duplicitous of the breach of contract
claim," and, therefore, a claim for fraud is not barred by the
economic loss doctrine) (citation and internal punctuation
omitted).

     The Gascards remaining assaults on Hall's fraud claim lack
merit.  It is sufficient to state that the complaint adequately
alleges, with the requisite degree of specificity, the essential
elements of a viable fraud claim.

---

F.3d 98, 108-09 (1st Cir. 2013).  That reasoning is equally
applicable to a plaintiff's fraud claim.

III. Count Two - Conspiracy to Defraud.

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987) (quoting 15A C.J.S. Conspiracy § 1(1), at 596 (1967)). So, to state a viable civil conspiracy claim, the complaint must plausibly allege: (1) that Lorettann Gascard and Nikolas Gascard; (2) agreed to accomplish some goal (either an unlawful goal to be achieved through lawful means, or a lawful goal to be achieved through unlawful means); (3) that the Gascards undertook one or more unlawful acts in furtherance of the agreement; and (4) as a proximate result, Hall suffered damages. See Jay Edwards, 130 N.H. at 47. In support of their motion to dismiss, the Gascards assert that the complaint fails to adequately allege the existence of any agreement between them to defraud Hall.

The civil conspiracy claim is not subject to dismissal on the grounds advanced by the Gascards. It adequately alleges an agreement between Lorettann Gascard and Nikolas Gascard to defraud Hall by, among other things, corroborating the false statements issued by the other, "as part of a concerted effort by the Gascards to sell the bulk of their collection of forged

Golubs to Hall." Complaint at para. 35. In support of that assertion, the complaint alleges that Lorettann Gascard and Nikolas Gascard each represented that the paintings they were selling to Hall were originals produced by Golub, and that such paintings were either acquired directly from the artist, or through a family member who had acquired them directly from the artist. See, e.g., Id. at paras. 12, 13, and 16. It also alleges that the Gascards worked together to sell forged paintings from each other's collections to Hall, and that Nikolas "brokered" the sale of six alleged Golub works from his mother's collection to Hall. See Id. at paras. 15-17. And, after Hall began to harbor suspicions that the works might not be authentic, the Gascards sought to reassure Hall by falsely representing that Lorettann Gascard was a longtime and close personal friend of the artist. See Id. at paras. 18 and 34.

The allegations set forth in the complaint adequately set forth the essential elements of a viable claim for civil conspiracy. Accordingly, the Gascards' motion to dismiss that claim must necessarily be denied.

IV. Count Three - Breach of Warranties.

In count three of his complaint, Hall advances both common law and statutory claims for breach of warranty. As to the

common law claims, the Gascards assert that there is no claim

for breach of warranty under New Hampshire common law when the

transaction at issue is governed by New Hampshire's version of

the Uniform Commercial Code.  See Defendants' Memorandum

(document no. 7-1) at 20 (citing Willard v. Park Indus., 69 F.

Supp. 2d 268, 274 (D.N.H. 1999) ("As there is no common law of

breach of warranty in New Hampshire, plaintiff's right of

recovery, if any, is governed by New Hampshire's [Uniform

Commercial Code].")).  Hall does not disagree (or, at a minimum,

his memorandum is silent on this issue).  Accordingly, to the

extent the complaint advances claims for common law breach of

warranty, those claims are dismissed.


     As for Hall's warranty claims under the Uniform Commercial

Code, N.H. Rev. Stat. Ann. ("RSA") ch. 382-A, the Gascards

assert that they are barred by the statute's four year

limitations period.  See RSA 382-A:2-725.  That statute provides

that an "action for breach of any contract for sale must be

commenced within four years after the cause of action has

accrued. . . . A cause of action accrues when the breach occurs,

regardless of the aggrieved party's lack of knowledge of the

breach."  RSA 383-A:2-275(1) and (2).  But, says Hall, the

limitations periods applicable to his various claims (including

his breach of warranty claims) were tolled by the discovery rule and/or the fraudulent concealment doctrine.[3]

At this juncture, the court cannot conclude that, as a matter of law, Hall's statutory breach of warranty claims are barred by the applicable limitations period. Whether equitable doctrines operate to toll that limitations period turns on questions of fact (and will require additional legal briefing by both parties). Defendants are obviously free to raise their arguments concerning the limitations periods applicable to Hall's various claims in the context of summary judgment, when (presumably) both the record and the parties' briefing on this issue will be more fully developed.

V.    Count Four - Breach of Contract.

As they did with regard to Hall's breach of warranty claim, the Gascards assert that Hall's breach of contract is barred by the applicable statute of limitations. But, for the reasons just discussed, the court cannot resolve that issue on an undeveloped factual record.

---

[3]    While the express language of the statute may preclude operation of the discovery rule, the parties have not briefed that issue. Nor have they addressed in any detail whether the fraudulent concealment doctrine might properly apply in this case.

VI. <u>Count Five - Unjust Enrichment</u>.

Next, the Gascards assert that, "Hall has [] plausibly inferred [sic] the existence of a contract under the UCC for every transaction he allegedly entered into with the defendants." Defendants' Memorandum at 21. Consequently, say the Gascards, Hall cannot simultaneously seek to recover on a theory of unjust enrichment. Specifically, the Gascards assert that, "It is a well-established principle that the court ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand." <u>Id</u>. (quoting <u>Clapp v. Goffstown Sch.</u> <u>Dist.</u>, 159 N.H. 206, 211-12 (2009)).

Again, however, the Gascards argument would seem to be premature. As this court (Laplante, C.J.) has noted:

> Under New Hampshire law, the court ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand. However, unjust enrichment may be available to contracting parties where the contract was breached, rescinded, or otherwise made invalid, or where the benefit received was outside the scope of the contract. Moreover, pleading in the alternative is an appropriate course to follow at this stage of the proceedings.

<u>Aftokinito Properties, Inc. v. Millbrook Ventures, LLC</u>, No. 09-CV-415-JD, 2010 WL 3168295, at *5 (D.N.H. Aug. 9, 2010)

(citations and internal punctuation omitted).  At this stage of

the litigation, the court cannot determine whether Hall may, or

may not, recover on his unjust enrichment claim – the factual

record is not sufficiently developed.  But, as permitted by the

Federal Rules of Civil Procedure, Hall has plausibly pled a

claim for unjust enrichment in the alternative to his claim for

breach of contract.  <u>See</u> Fed. R. Civ. P. 8(a)(3) ("[A] demand

for the relief sought . . . may include relief in the

alternative or different types of relief.").


Stated somewhat differently, barring unusual circumstances,

it is unlikely that Hall will be able to <u>recover</u> on both an

unjust enrichment claim and a breach of contract claim.  But, he

is certainly entitled to <u>plead</u> his claims in the alternative.


VII. <u>Count Six - Consumer Protection Act</u>.

Finally, the Gascards move to dismiss Hall's claim under

New Hampshire's Consumer Protection Act, RSA ch. 358-A.  That

statute makes it unlawful for "any person to use any unfair

method of competition or any unfair or deceptive act or practice

in the conduct of any trade or commerce within" the state of New

Hampshire.  RSA 358-A:2.  The statute defines "trade and

commerce" broadly, to include: "the advertising, offering for

sale, sale, or distribution of any services and any property,

tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state." RSA 358-A:1, II. Although that statute "casts a wide net," Anderson v. Century Prods. Co., 943 F. Supp. 137, 153 (D.N.H. 1996), it does not apply to transactions that are "strictly private in nature" and are "in no way undertaken in the ordinary course of a trade or business." Hughes v. DiSalvo, 143 N.H. 576, 578 (1999) (quoting Lantner v. Carson, 374 Mass. 606, 373 N.E.2d 973, 975 (1978)).

According to the Gascards, Hall's complaint fails to adequately alleged that "any of the alleged transactions took place in a trade or business context." Defendants' Memorandum at 22 (citation and internal punctuation omitted). In response, Hall says:

> The allegations set forth in the Complaint fall
> squarely within the purview of the CPA as they are
> based on commercial transactions. At least eight of
> the Works were purchased at a public auction held at
> two different auction houses at multiple different
> auction dates. (Compl. ¶¶ 10-14). Those transactions
> were indisputably not private business transactions.
> Moreover, the direct purchases only arose after Hall
> purchased a Work from the Gascards through an online
> auction site, and N. Gascard offered additional Works
> for sale. (Compl. ¶ 14). The direct purchases were
> not isolated single-shot transactions. Rather, they
> were repeated transactions, involving the purchase of
> sixteen different Works. (Compl. ¶¶ 16-17). And Hall

did not acquire all of the putative Golub Works on
offer from the Gascards, leaving the possibility that
they have sold other fake Golubs to other unsuspecting
art collectors.

Plaintiff's Memorandum (document no. 10-1) at 21-22.


At this stage, Hall's complaint adequately alleges that the
Gascard's various sales of allegedly fraudulent works of art
were not "strictly private in nature," but were instead made in
the ordinary course of trade or business.  Hall's Consumer
Protection Act claim must, therefore, survive defendants' motion
to dismiss.  Should the Gascards continue to press their
argument that the Consumer Protection Act does not apply to any
of the transactions referenced in the complaint, that claim can
be better addressed on summary judgment.  As the New Hampshire
Supreme Court has noted, "To determine whether the Consumer
Protection Act applies to a particular transaction, we analyze
the activity involved, the nature of the transaction, and the
parties to determine whether a transaction is a personal or
business transaction."  Brzica v. Trustees of Dartmouth Coll.,
147 N.H. 443, 451 (2002) (quoting DiSalvo, 143 N.H. at 578).
Perhaps a more fully developed record will provide the necessary
factual support for the Gascards' argument.

## Conclusion

For the foregoing reasons, as well as those set forth in Plaintiff's Memorandum of law, defendants' motion to dismiss (document no. 7) is denied in all respects, except as to plaintiff's common law breach of warranty claims (a portion of count three), which are dismissed.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 12, 2017

cc:  Ted Poretz, Esq.
     Samantha D. Elliott, Esq.
     Lorettann Gascard, pro se
     Nikolas Gascard, pro se