UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Andrew Hall,
        Plaintiff

        v.                              Case No. 16-cv-418-SM
                                        Opinion No. 2018 DNH 152
Lorettann Gascard and
Nikolas Gascard,
        Defendants

## O R D E R

Plaintiff, Andrew Hall, is a collector of post-war and
contemporary art.  Over a two-year period beginning in 2009, he
purchased twenty-four works of art from the defendants,
Lorettann Gascard and her son, Nikolas Gascard.  Hall says he
purchased some of those pieces directly from the Gascards, while
others were acquired indirectly through auction houses to which
the Gascards had consigned the works.  And, says Hall, the
Gascards affirmatively represented that each of the twenty-four
works he purchased was an original piece produced by the
American artist Leon Golub.  In early 2015, however, Hall
discovered that all of those twenty-four works are forgeries.

In this action, Hall advances six common law and statutory
claims against the Gascards: fraud (count one); conspiracy to
defraud (count two); breach of warranty (count three); breach of

contract (count four); unjust enrichment (count five); and
unfair and deceptive trade practices, in violation of New
Hampshire's Consumer Protection Act (count six).  The Gascards
move for summary judgment, asserting that they are entitled to
judgment as a matter of law as to each of Hall's claims.

For the reasons discussed, the Gascards' motion for summary
judgment is granted as to Hall's UCC warranty claims.
Additionally, because Hall concedes that his Consumer Protection
Act claim and his common law breach of contract claim fail to
state viable causes of action, those claims are dismissed.[1]

## Standard of Review

When ruling on a motion for summary judgment, the court is
"obliged to review the record in the light most favorable to the
nonmoving party, and to draw all reasonable inferences in the
nonmoving party's favor."  Block Island Fishing, Inc. v. Rogers,
844 F.3d 358, 360 (1st Cir. 2016) (citation omitted).  Summary
judgment is appropriate when the record reveals "no genuine
dispute as to any material fact and the movant is entitled to

---

[1]     In his Memorandum in Opposition to Summary Judgment
(document no. 46-1), Hall states that he "does not oppose
dismissal of his New Hampshire Consumer Protection Act claim."
Id. at 2, n.2.  And, in his Supplemental Memorandum of Law
(document no. 52), Hall represents that he has "withdrawn" his
common law breach of contract claim.  Id. at 3, n.1.

judgment as a matter of law." Fed. R. Civ. P. 56(a).  In this
context, a factual dispute "is 'genuine' if the evidence of
record permits a rational factfinder to resolve it in favor of
either party, and 'material' if its existence or nonexistence
has the potential to change the outcome of the suit."  Rando v.
Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted).

Consequently, "[a]s to issues on which the party opposing
summary judgment would bear the burden of proof at trial, that
party may not simply rely on the absence of evidence but,
rather, must point to definite and competent evidence showing
the existence of a genuine issue of material fact."  Perez v.
Lorraine Enters., 769 F.3d 23, 29-30 (1st Cir. 2014).  In other
words, "a laundry list of possibilities and hypotheticals" and
"[s]peculation about mere possibilities, without more, is not
enough to stave off summary judgment."  Tobin v. Fed. Express
Corp., 775 F.3d 448, 451-52 (1st Cir. 2014).  See generally
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**Background**

The factual background to this dispute is set forth in the
court's prior order (document no. 19) and need not be recounted
in detail.  It is sufficient to note that Hall purchased
numerous paintings from Nikolas Gascard and his mother,

Lorettann Gascard, each of which was a purported original work of the American painter Leon Golub. The Gascards made various statements explicitly attesting to the authenticity of each work and/or made historical statements about the works' provenance that strongly implied they were authentic, original works of Golub (e.g., "Acquired directly from the artist" or "Acquired directly from the artist by descent to the present owner"). They were not original works. Instead, they were all high-quality forgeries - sufficient to fool even sophisticated art houses (e.g., Sotheby's and Christie's), as well as the (alleged) artist's own son, Stephen Golub. See Email from Stephen Golub dated Nov. 4, 2010 (document no. 46-17) at 2. Moreover, Hall asserts that both Lorettann Gascard and Nikolas Gascard knew that each piece was a forgery when they sold it to him. In support of that claim, Hall notes, for example, that Nikolas Gascard admits that he fabricated the names for each work that was sold to Hall. Nikolas also admits that he invented the date on which Golub allegedly painted each of the works. See generally Deposition of Nikolas Gascard (document no. 46-5) at 124-29. Hall also points to other evidence demonstrating that Nikolas Gascard misled various auction houses and potential purchasers about how he and/or his mother came into possession of various works. See, e.g., Id. at 93-98, 177-80.

In total, Hall purchased twenty-four paintings from the Gascards (either directly or through an intermediary, such as an auction house), for a total purchase price well in excess of $600,000. Hall has settled claims against both Sotheby's and Christie's. What remain, then, are his claims against the Gascards arising out of his purchase of sixteen forged paintings directly from them, and one purchased from Artnet (on consignment from the Gascards), for a total purchase price of approximately $468,000.

## Discussion

In support of their motion for summary judgment, the Gascards advance several arguments. First, they say Hall's claims are untimely and barred by the statute of limitations. Second, they assert that Hall has not sufficiently demonstrated that he justifiably relied upon the Gascards' allegedly false statements regarding the various works' provenance (indeed, the Gascards claim that Hall had an independent duty to verify the authenticity of each work and his reliance upon their various representations of authenticity and/or provenance was neither reasonable nor justifiable). Finally, they say that there is no evidence of any intent to defraud on their part. In short, the Gascards seem to be suggesting that they are as shocked as anyone that all the works they sold to Hall (as well as various

other purchasers) over the years, for hundreds of thousands of dollars, are forgeries.[2]

I.   Statute of Limitations.

Hall asserts that it was not until 2015 that he first had reason to suspect that at least some of the paintings he purchased from the Gascards are forgeries.  Prior to that, he says he had no reason to doubt their authenticity.  For example, he points out that he hosted an event at his home in late 2010, at which he displayed some of the fake works he had acquired from the Gascards.  Attending that event were a number of Golub "aficionados," including Golub's son, Stephen, and Golub's former studio manager, Samm Kunce.  Neither man raised any question about the potential authenticity of those works.  See Exhibit O to plaintiff's memorandum (document no. 46-17) at 2-3.

In November of 2014, the Hall Art Foundation – a non-profit organization operated by Hall – began planning an exhibition of the works of Golub that Hall had acquired over the years.  As part of that preparation, the foundation's executive director sent images of all the works proposed for exhibition to the

---

[2]   Because Hall agrees that his claim under New Hampshire's Consumer Protection Act should be dismissed, the court need not address the Gascards' legal arguments about that claim.

Nancy Spero and Leon A. Golub Foundation for the Arts.  He asked

the Golub Foundation to verify the names and dates of all the

subject works.  In February of 2015, the Golub Foundation

responded that although it had records relating to most of those

works, it had nothing relating to the pieces that Hall had

purchased from the Gascards.  See Exhibit R to plaintiff's

memorandum (document no. 46-20) ("Unfortunately, the Foundation

does not recognize the remainder of the works on your list").

That, says Hall, was the first time he had any reason to

question the authenticity of the works purchased from the

Gascards.  He filed this suit on September 16, 2016,

approximately eighteen months after that discovery.


   A.   Hall's Common Law Claims.

   Hall's common law claims of fraud (count one), conspiracy

to defraud (count two), and unjust enrichment (count five) are

all governed by a limitations period established in N.H. Rev.

Stat. Ann. ("RSA") 508:4.  See, e.g., Plaisted v. LaBrie, 165

N.H. 194, 197 (2013) (fraud); In re DeSteph, No. 09-11681-MWV,

2010 WL 2206983, at *9 (Bankr. D.N.H. May 26, 2010) (fraud);

Coyle v. Battles, 147 N.H. 98, 102 (2001) (unjust enrichment);

McKenzie v. Burns, No. 2008-0780, 2009 WL 10643721, at *1 (N.H.

Oct. 16, 2009) (unjust enrichment, citing Coyle).  That statute

establishes a three-year limitations period for all personal

actions.  It also codifies the so-called "discovery rule" which,
in certain circumstances, tolls the running of the limitations
period.  See Id. ("[T]he action shall be commenced within 3
years of the time the plaintiff discovers, or in the exercise of
reasonable diligence should have discovered, the injury and its
causal relationship to the act or omission complained of.").
The New Hampshire Supreme Court has explained that:

> Under the discovery rule exception, the statute of
> limitations does not accrue until: (1) the plaintiff
> knows or reasonably should have known of the injury;
> and (2) the plaintiff knows or reasonably should have
> known of the causal connection between the injury and
> the alleged conduct of the defendant.

Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 824-25
(2005) (citations omitted).  Whether the plaintiff exercised
reasonable diligence in discovering the causal connection
between his or her injury and the defendant's alleged act or
omission is a question of fact – one that the trial court
typically resolves.  See, e.g., Id. at 825; Keshishian v. CMC
Radiologists, 142 N.H. 168, 179 (1997).


      Here, Hall has pointed to adequate, properly-supported
facts to support his assertion that he filed this action well
within three years of the time when he reasonably should have
discovered that the works at issue are forgeries.  For example,

he notes that the Gascards do not assert that any of the works at issue are obviously fake. Indeed, they do not explicitly concede that any are forgeries. And, at least some of the alleged forgeries are of sufficient quality to have apparently fooled even Golub's son and Golub's former studio manager. Thus, one may reasonably infer that there are not any patent or obvious signs that the works are not what the Gascards represented them to be. But, once he had reason to suspect that the works at issue are forgeries (i.e., the February 19, 2015, email from the Golub Foundation), Hall acted promptly to bring suit.

In response, the Gascards have identified no evidence in the record to suggest that, through the exercise of reasonable diligence, Hall could have (or should have) made that discovery earlier. Consequently, Hall's common law claims (fraud, conspiracy to defraud, and unjust enrichment) are timely under RSA 508:4.

B.    Hall's UCC Warranty Claims.

The allegedly forged paintings Hall purchased from the Gascards are "goods" under Article 2 of New Hampshire's Uniform Commercial Code and, therefore, Hall's breach of warranty claims are governed by the UCC. See RSA 382-A:2-102 and 2-105. Under

the UCC, a seller can create an express warranty in several ways:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

RSA 382-A:2-313(1) (emphasis supplied). Moreover, "[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." Id. at § 2. But, mere expressions of judgment about the potential value of an item, or the seller's "opinion or commendation of the goods" is insufficient to create an express warranty.

Here, Hall asserts that the Gascards expressly warranted that each of the paintings at issue was, in fact, a genuine work produced by Leon Golub. So, for example, he points to a March 1, 2011 invoice for the sale of 10 paintings for a total price of $275,000. That invoice expressly states that each work was produced by Leon Golub. It also provides the alleged title of each work and its purported date of production. See Invoice (document no. 46-12).

The Gascards' description of the works as having been
produced by Leon Golub was plainly a "part of the basis of the
bargain." RSA 382-A:2-313(1). <u>See also</u> <u>Id</u>. cmnt. 3 ("In actual
practice, affirmations of fact made by the seller about the
goods during a bargain are regarded as part of the description
of those goods; hence no particular reliance on such statements
need be shown in order to weave them into the fabric of the
agreement. Rather, any fact which is to take such affirmations,
once made, out of the agreement requires clear affirmative
proof."). Hall is a collector of the works of Leon Golub.
Nothing in the record suggests that he would have paid
approximately one-half million dollars for a collection of
forged works that merely resembled pieces produced by Golub.
The Gascards' repeated representations that each work was an
original Golub piece, as well as their various statements about
how they acquired each work, its alleged title, and its alleged
date of production, all combined to create "description[s] of
the goods which [were] made part of the basis of the bargain"
and, therefore, created an "express warranty that the goods
shall conform to [those] description[s]." RSA 382-A:2-
313(1)(b).

Hall has, therefore, stated a viable claim under the UCC.
That is, by selling him (allegedly) forged works, the Gascards

breached their warranty that each work was an original painted

by Leon Golub.  But, say, the Gascards, Hall's warranty claim is

untimely.  On that point, the court is constrained to agree.


The UCC provides that, in contracts for the sale of goods,

an action for breach of warranty:

> must be commenced <u>within four years</u> after the cause of
> action has <u>accrued</u>.  By the original agreement the
> parties may reduce the period of limitation to not
> less than one year but may not extend it.
>
> A cause of action accrues when the breach occurs,
> regardless of the aggrieved party's lack of knowledge
> of the breach.  A breach of warranty occurs when
> tender of delivery is made, except that where a
> warranty <u>explicitly extends</u> to <u>future performance</u> of
> the goods <u>and</u> <u>discovery of the breach must await the</u>
> <u>time of such performance</u> the cause of action accrues
> when the breach is or should have been discovered.

RSA 382-A:2-725(1) and (2) (emphasis supplied).


According to Hall, when the Gascards represented that each

work was an original Golub painting, they "explicitly warranted"

the "future performance" of those paintings - that is, that each

work was, and would forever remain, an original work by Golub.

That argument has, however, been expressly rejected by the Court

of Appeals for the First Circuit.  <u>See</u> <u>Wilson v. Hammer</u>

<u>Holdings, Inc.</u>, 850 F.2d 3 (1988) (interpreting Massachusetts's

version of the section 2-725, which is identical to New

Hampshire's).  In <u>Wilson</u>, the court described the plaintiffs'

theory of recovery as follows:

> Section 2-725(2) refers to a warranty of "future
> performance," and so the Wilsons' theory depends first
> on extending the concept of a "performance" to a
> painting.  They concede that paintings, unlike
> consumer goods like automobiles and washing machines,
> generally are not purchased based on how they
> "perform" or "function."  They suggest, however, that
> a painting "performs" "by being what it [is]
> represented to be."  In this case, they say, "Femme
> Debout" could "perform" only by being an authentic
> Vuillard.
>
> Accepting at least for the sake of argument that a
> painting does "perform" by being genuine, the question
> then becomes whether Hammer's express warranty of
> authenticity not only guaranteed the present "being"
> of the painting as an authentic Vuillard but also
> extended, as required by section 2-725(2), to the
> future existence of the painting as a Vuillard.  On
> this point, the Wilsons argue that because the
> authenticity of a painting does not change over time,
> Hammer's warranty "necessarily guaranteed the present
> <u>and</u> future existence of the Painting as an authentic
> <u>Vuillard</u>."  Therefore, they contend, explicit words
> warranting future performance would be superfluous in
> this context.

<u>Id</u>. at 5 (emphasis in original) (citation omitted).


The court concluded, however, that while the plaintiffs'

argument was "appealing," it was not consistent with the express

language of the statute: the seller's warranty of authenticity

did not explicitly extend to "future performance."  Moreover,

the court noted that the tolling provision of section 2-725

"requires that discovery of the breach 'must await' the time of such future performance" - something not present in an art fraud case. Id. at 6 (emphasis in original). "Because of the static nature of authenticity, the Wilsons were no less capable of discovering that 'Femme Debout' was a fake at the time of purchase than they were at a later time." Id. Consequently, the court concluded that,

> the exception to the statute is inapplicable to the
> facts before us. In this case, the product's
> "performance" never changed. The painting failed to
> exist as a Vuillard as much at the time of purchase in
> 1961 as at the time the Wilsons discovered its true
> nature in 1985. Although the Wilsons were unaware of
> the painting's faulty performance until they attempted
> to sell the work of art, they easily could have
> discovered the problem from the outset by means of a
> second expert opinion. Moreover, in the ordinary case
> - in the absence of an explicit promise of future
> performance - a cause of action is lost after four
> years "regardless of the aggrieved party's lack of
> knowledge of the breach."

Id. at 7 (emphasis in original). See also Rosen v. Spanierman, 894 F.2d 28, 31 (2d Cir. 1990) (concluding, largely for the same reasons as those expressed in Wilson, that plaintiffs' UCC warranty claims against the seller of forged artwork were time-barred).

Here, as in both Wilson and Rosen, the court necessarily concludes that plaintiff's warranty claims, which were filed

more than four years after his purchase of the alleged Golub paintings, are untimely under the UCC.[3]


II.  Justifiable Reliance and Due Diligence.

To prevail on his fraud claim at trial, Hall must demonstrate that the Gascards "made a representation with knowledge of its falsity or with conscious indifference to its truth, with the intention to cause [Hall] to rely upon it." Snierson v. Scruton, 145 N.H. 73, 77 (2000).  Additionally, Hall must show that his reliance upon that false representation was reasonable.  See generally Patch v. Arsenault, 139 N.H. 313, 319 (1995); Gray v. First N.H. Bank, 138 N.H. 279, 283-84 (1994). But, say the Gascards, Hall's reliance upon their various assurances of the paintings' authenticity - both explicit (e.g., invoices stating the works where produced by Golub) and implicit (allegedly false statements of provenance) - was not, as a matter of law, reasonable.  They suggest that as a collector of the works of Leon Golub, Hall was a "sophisticated purchaser" of such artwork, with "demonstrated access to multiple experts in

---

[3]    The court is aware of the opinion of the United States District Court for the District of Hawaii, issued in Balog v. Center Art Gallery-Hawaii, Inc., 745 F. Supp. 1556 (D.Hi. 1990) (criticizing the Wilson court for having embraced "a too-literalistic application of the Code which takes no cognizance of the unique problem presented by the application of the U.C.C. to artwork and other collectibles"), but declines to adopt its expansive reasoning.

Golub's work." Defendants' Memorandum (document no. 44-1) at

20. Consequently, say the Gascards, Hall should have done more

than simply rely upon their representations to assure himself of

each work's authenticity. That view is, however, inconsistent

with New Hampshire law and requires little discussion.


As noted above, the Gascards do not claim that any one of

the works at issue was obviously a fake. And, if those works

are forgeries, they are apparently of sufficient quality to have

fooled several people who were very familiar with Golub's work.

Moreover, Hall knew that the Gascards had sold several works

purporting to be original Golubs through both Christie's and

Sotheby's - reputable auction houses that, presumably, make

reasonable efforts to avoid dealing in forged works of art.

Under those circumstances, Hall was not, as the Gascards

suggest, obligated to secure the services of an independent

expert to determine the authenticity of each of the works -

particularly since the information bearing on the works'

authenticity (e.g., how they were acquired and from whom) was

peculiarly within the Gascards' own knowledge. See, e.g., Colby

v. Granite State Realty, Inc., 116 N.H. 690, 691 (1976) ("A

purchaser generally is justified in relying on material

statements of fact concerning matters peculiarly within the

seller's own knowledge."). See also Restatement (Third) of

Torts: Liab. for Econ. Harm, § 11 cmnt. d (2014) ("The requirement [of justifiable reliance] does not impose a duty of active investigation on a plaintiff, and does not entitle a defendant to exploit a plaintiff's foolishness with impunity; if the defendant has deliberately preyed on the plaintiff's inattention, that inattention should not be considered an instance of unjustifiable reliance."); Sanford Inst. for Sav. v. Gallo, 156 F.3d 71, 74–75 (1st Cir. 1998) ("A party may justifiably rely on a misrepresentation even when he could have ascertained its falsity by conducting an investigation.  This rule applies whether the investigation would have been costly and required extensive effort or could have been made without any considerable trouble or expense.  This pragmatic rule of conduct is at the heart of millions of commercial transactions conducted daily in this nation which rely on the honesty and truthfulness of representation made by the parties.") (citations and internal punctuation omitted).

Whether Hall's reliance upon the various representations of authenticity offered by the Gascards was reasonable is a disputed factual question that cannot be resolved as a matter of law on this record.  See, e.g., Blackman v. Rowe, 96 N.H. 207, 210 (1950).

III. <u>Intent to Defraud</u>.

Finally, the Gascards assert that Hall cannot demonstrate, by clear and convincing proof, that they knew the paintings were forgeries or that they intended to deceive him. <u>See generally</u> <u>Studwell v. Travelers Ins. Co.</u>, 121 N.H. 1090, 1091 (1981) ("To prevail in an action for misrepresentation, fraud or deceit, the plaintiffs must prove that there was a misrepresentation of fact. The plaintiffs have the burden of proving fraud 'by clear and convincing proof.'") (citation omitted). To prevail on their motion for summary judgment, the Gascards must demonstrate that "the pleadings contained no issues of fact material to the allegation of fraud." <u>Id</u>. at 1091-92. They have failed to do so. Hall, on the other hand, has pointed to sufficient facts which, if credited as true, would permit a jury to conclude, by clear and convincing evidence, that the Gascards knew the paintings at issue were forgeries (or, at a minimum, that they were consciously indifferent to that fact). Hall has, for example, shown that:

> 1. Prior to the sales to Hall, the Gascards represented that they obtained the paintings either "directly from the artist" or indirectly "from the artist by descent." Yet, Nikolas Gascard admitted in his deposition that he did not receive any of the works directly from Golub. He also admitted that, although he claims to have inherited many of the works from his aunt, he did not know whether she actually acquired them

directly from Golub. <u>See</u> Deposition of Nikolas
Gascard (document no. 46-5) at 180-81.

2.  In discovery, the Gascards have yet to provide
    documentation to support even a single statement
    of provenance that they gave with respect to the
    works (e.g., a letter, a receipt, a will, a bill
    of sale, etc.).

3.  Nikolas Gascard also admitted that some of the
    statements of provenance he created for various
    works were false.  <u>Id</u>. at 94-97, 180-81.

4.  Aside from their statements of provenance (which
    Nikolas's deposition testimony substantially
    undermines), the Gascards have not pointed to any
    evidence suggesting that the paintings are
    authentic.  At best, they might claim to have
    "assumed" they were genuine works by Golub.  But,
    that is not what they represented to Hall.  As to
    each, they unequivocally represented that it was
    an authentic work produced by Golub - not, for
    example, something "believed" to be a work of
    Golub, or "painted in the style of Golub."

5.  In his deposition, Nikolas Gascard admitted that
    he invented the names for the works sold to Hall,
    <u>id</u>. at 128-29, as well as the dates on or about
    which those works were allegedly produced, <u>id</u>. at
    124-28.  Yet, he never revealed to Hall that he,
    rather than Golub, had assigned those names to
    the works, nor did he reveal to Hall that he had
    assigned the approximate dates of production to
    each work.

6.  For her part, Lorettann Gascard has given
    inconsistent and contradictory accounts of how
    she came to acquire the various works, at times
    saying they were gifts or purchases directly from
    Golub (which would mean that Golub gave or sold
    her forgeries of his own works), and later
    testifying in her affidavit (document no. 44-5)
    that the works had been discovered in the
    apartment of her deceased sister-in-law
    (Nikolas's aunt).

7.  While perhaps merely a coincidence, Lorettann
    Gascard is, herself, a friend or acquaintance of
    Golub.  She is also both an art historian and an
    artist.  Indeed, in 1969-70, she "took classes in
    Elementary Painting and Advanced Painting which
    were taught by Leon Golub."  Affidavit of
    Lorettann Gascard at para. 3.  She is, therefore,
    familiar with Golub's "distinctive style" of
    painting.  <u>Id</u>. at para. 12.  Although Hall has
    yet to provide direct evidence on the matter, he
    plainly suspects that Lorettann is the person who
    produced the forgeries.

The evidence of record upon which Hall relies is sufficient
to create a genuine issue of material fact concerning whether
the Gascards knew the works sold to Hall were forgeries.

## Conclusion

For the foregoing reasons, the Gascards' motion for summary
judgment (document no. 44) is granted in part and denied in
part.  It is granted to the extent that the Gascards are
entitled to judgment as a matter of law on count three (UCC
warranty claims) of Hall's complaint.  Additionally, because
Hall has "withdrawn" his common law breach of contract claim
(count four), and "does not oppose dismissal of his New
Hampshire Consumer Protection Act claim" (count six), those
claims are dismissed as well.  In all other respects, the
Gascards' motion is denied.

What remains for trial, then, are Hall's claims for fraud (count one), conspiracy to defraud (count two), and unjust enrichment (count five).

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

July 27, 2018

cc:  Lawrence B. Gormley, Esq.
    Ted Poretz, Esq.
    Jeffrey Christensen, Esq.
    William B. Pribis, Esq.