UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Andrew Hall

    v.                                              Case No. 16-cv-418-SM
                                                        Opinion No. 2019 DNH 069

Lorettann Gascard and
Nikolas Gascard

**O R D E R**

Plaintiff prevailed in this civil art fraud case, and he now seeks an award of reasonable attorney's fees necessarily incurred in vindicating his rights. Defendants object.

The plaintiff, Andrew Hall, bought a number of paintings directly from defendant Nikolas Gascard, and a few paintings from others that Nikolas put into the art market. Hall thought the paintings he bought were works by the late artist Leon Golub. He thought so primarily because Nikolas unequivocally represented that the works he sold to Hall were by Golub and, based on Nikolas's representations, the other sellers also represented that the works they sold were by Golub. The trial evidence, however, was quite persuasive: the paintings purchased by Hall were crude fakes. Leon Golub did not create them.

There was also some credible evidence pointing to defendant Lorettann Gascard as the suspect most likely to have created the fakes. Lorettann was an art history professor and artist, who studied under Golub decades ago, and who claimed a long-standing friendship with Golub before he died. But Hall's counsel did not (understandably) press the question of who created the works, focusing instead on their inauthenticity and the Gascards' knowing and intentional involvement in selling them.

The defense was anemic, resting almost entirely on defendants' testimony and cross-examination of Hall's art expert. The Gascards recounted Lorettann's intermittent personal relationship with the artist and her interest in his work; suggested that her former husband (Nikolas's father) had an interest in Golub's work as well, and that perhaps he had obtained the suspect paintings from the artist or from others; suggested that perhaps his sister, Nikolas's aunt, also collected art to some extent and perhaps acquired some of the Golub paintings from her brother, or from others. The aunt died in Europe and, the Gascards claimed, she left the suspect paintings at issue, and other ostensible Golubs (a total of 40 or 50 works), in her apartment closet, where the Gascards found them when they went to settle her affairs. The aunt left her estate to Nikolas. Nikolas's father (then deceased) had also

left his estate to Nikolas.  The "Golub works," then, whether belonging to the aunt or Nikolas's father, were said to be part of Nikolas's inheritance.

The defendants testified that they brought the paintings to New Hampshire from Europe when they returned home.  They claimed to have rolled them up and wheeled them on a cart through an airport to a Lufthansa Airlines check-in counter, where the airline graciously took charge of the rolled paintings, wrapped them, and presumably put them in the plane's cargo hold.  The paintings would have weighed approximately 250 pounds or so, and, given the unfortunate circumstances surrounding the aunt's death and the delayed discovery of her body, the paintings were impregnated with a noticeable stench.  Yet, defendants insisted, they experienced no difficulty transporting the paintings out of Europe, then through U.S. Customs, and to their home in New Hampshire.

Defendants said they thought (and still think) the works were by Golub.  They began liquidating the collection in a way that would bring the best prices, i.e. a few at a time.

Plaintiff's counsel methodically challenged every aspect of defendants' narrative, exposed many misrepresentations made

3

about the works' provenance, and offered uncontradicted expert opinion evidence that the works were crude fakes. The jury had little difficulty in expeditiously rejecting the defense and returning a verdict in Hall's favor against Nikolas for fraud and against both Nikolas and Lorettann for conspiracy to commit fraud. Hall was awarded $465,000.00 in damages, the full amount paid for the works.

**Attorney's Fees**

This is a diversity of citizenship case in which New Hampshire law applies. New Hampshire generally follows the "American Rule" with respect to awards of attorney's fees. Under the American Rule parties to litigation pay their own fees. Harkeem v. Adams, 117 N.H. 687, 690 (1977). "Underlying the rule that the prevailing litigant is ordinarily not entitled to collect his counsel fees from the loser is the principle that no person should be penalized for merely defending or prosecuting a lawsuit. An additional important consideration is that the threat of having to pay an opponent's costs might unjustly deter those of limited resources from prosecuting or defending suits." Id. (citing Tau Chapter v. Durham, 112 N.H. 233, 237 (1972) and Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718 (1967)); see also In the Matter of Mallett and Mallett, 163 N.H. 202, 211 (2012).

The New Hampshire Supreme Court has, however, recognized limited exceptions to the general rule. A court may award attorney's fees when specifically authorized by statute, or when based upon an agreement between the parties, or when a judicially-created common law exception to the general rule is found applicable. Mallett, 163 N.H. at 211. Here, plaintiff seeks fees under the judicially recognized "bad faith litigation" exception:

> Under the bad faith litigation theory, an award of attorney's fees is appropriate [when] one party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, [when] the litigant's conduct can be characterized as unreasonably obdurate or obstinate, and [when] it should have been unnecessary for the successful party to have brought the action.

Frost v. Comm'r, N.H. Banking Dep't, 163 N.H. 365, 378 (2012) (quotation omitted). That exception to the American Rule as established by the New Hampshire Supreme Court, focuses on the losing party's litigation conduct; it is related to the conduct giving rise to the litigation in this case in the sense that interposing a frivolous defense would qualify as bad faith and expose the losing party to an award of fees, in the discretion of the trial court.

Essentially, Hall sees "bad faith" in the Gascards' proffered defense, because, he argues, the defense was patently unreasonable, that is, "without any reasonable basis in the facts provable by evidence." Harkeem, 117 N.H. at 691; Keenan v. Fearon, 130 N.H. 494, 502 (1988).

Certainly, any reasonable trial observer would likely have noticed that the Gascards' defense was weak and largely unsupported by "hard evidence," i.e. pertinent documents, exhibits, or verified facts. There were, for example, no receipts, checks, or paper trails of any sort associated with the paintings at issue that might establish their origin, or dates of creation, or dates of acquisition. There were no export documents related to transportation of the paintings out of Europe; no airline receipts, or bills; no personal travel tickets; no customs documents or import duty receipts; nothing tangible to show the works were, as the Gascards claimed, found in Europe and brought to the United States. No defense art expert offered an opinion to the effect that Leon Golub created the works, or even may have created them. Nor did any independent expert opine that a lay person — someone not an art expert or Golub expert — could have reasonably believed, upon examination, that Golub created the works. (Although the evidence did disclose that Hall, a major Golub collector and

6

presumably one familiar with the fundamental characteristics of Golub's work, and at least two highly reputable art auction houses, were apparently satisfied (initially at least) that the paintings were created by Golub.)  Defendants did offer what appeared to be the aunt's Last Will and Testament, which did leave unspecified art (paintings) to Nikolas.  The Will was excluded at trial, under the Rules of Evidence, but with respect to an attorney's fees motion, it is mildly relevant in suggesting at least some arguable support for the defense narrative — i.e., that paintings were left to Nikolas by his aunt, and were found in her closet.

Defendants, as they note, did prevail with respect to some legal claims asserted by Hall, and avoided a minor damages claim.  But, in context, that is of little significance.  With respect to the essential substantive claim — art fraud — the proffered defense was basically, "We acquired the works from Nikolas's deceased aunt; we thought (think) she acquired them from the artist, or from her brother (Nikolas's father), who we think was a Golub collector, because he knew Lorettann studied under Golub and appreciated his work, and because Lorettann had given him a number of Golub works that she had salvaged when she was a student; and, critically, we had no reason to think the works were not authentic Golubs and, although titles for the

works were fabricated by Nikolas, and the works' provenance was otherwise misrepresented to facilitate sales, we still believe the works to be authentic Golubs."  The validity of that general defense necessarily turned on credibility of the witnesses, and the totality of the factual circumstances as presented to the jury.

While it might seem that an exception to the general American Rule ought to be recognized in cases in which active fraud is found by clear and convincing evidence, New Hampshire has not created such a blanket rule for fraud (or any other) cases.  See e.g., Maguire v. Merrimack Mutual Ins. Co., 133 N.H. 51 (1990) (insurance fraud involving deliberate arson by owner of a home followed by a fraudulent claim on the home insurance policy does not necessarily command an award of fees).  That is to say, prevailing in a case asserting fraud does not itself entitle a litigant to an award of attorney's fees under New Hampshire's common law.  Id.  But, neither is an award precluded.  An award of fees under the recognized exceptions to the general rule may be available, and always remains a matter of discretion for the trial court.

The pertinent exception to the American Rule that might warrant a fee award in this case relates to whether the

defendants' litigation position was "patently unreasonable." See Keenan v. Fearon, 130 N.H. at 502. Without doubt there will be cases of fraud in which a proffered defense is exposed as "patently unreasonable," but this is not quite that case.

Here, the defendants' litigation position was bereft of objective supporting evidence, but it cannot be said, on this record, that it was frivolous. The defendants' testimony was sufficiently coherent, and roughly consistent, in relating a narrative that, if credited, would have been consistent with, at least, a finding by the jury that they obtained the paintings from the aunt's closet, assumed they were Golubs, and were not aware (nor should they have been aware) that the artwork was not genuine, or, that they believed the art was authentic, and so had no intent to defraud. That is, the jury could have found that defendants were unsophisticated and uninformed sellers of fake Golubs inherited from a relative with whom they had had little contact over the years.

The outcome in this case, as noted, necessarily turned in significant part on witness credibility, expert opinion evidence, close examination of the representative works, and an assessment of the totality of the circumstances presented to the jury. That the defense story seemed stretched and doubtful,

that it was largely unsupported by objective evidence, and seemed downright implausible in many respects, does not equate to a "patently unreasonable" litigation posture within the meaning of New Hampshire's exceptions to the American Rule.

That the jury concluded, by clear and convincing evidence, that defendants engaged in fraudulent conduct naturally gives rise to a sense that the victim of that fraud ought to recover attorney's fees as well as compensatory damages.  But more is required under New Hampshire's common law.  The evidence in this case was limited — pertinent records, or evidence of the absence of records (like customs declarations), would no doubt be difficult to come by.  Such records, though, may have definitively, or persuasively, exposed the defense as being based not just on an implausible but potentially accurate story, but on a plainly false one.  A defense shown to be based on false testimony would certainly qualify as a "patently unreasonable" defense, and would likely compel the exercise of discretion to award fees.

That is essentially what is being argued here of course — that the defense narrative was plainly false, and so the litigation conduct was in bad faith, the defense having been offered without any reasonable basis in the facts provable by

evidence.  But the trial record falls short of establishing more than that defendants' story was found by the jury to be not credible in material respects, and, at minimum, that the jury found they knew or should have known the works were inauthentic. An adverse credibility determination is not equivalent to a finding that the testimony was plainly false, and the record evidence does not rise to the level necessary for the court to declare it patently false with the requisite degree of confidence.

Put another way, could a rational jury have credited defendants' narrative, and could it have found that defendants believed the works to be authentic?  Or, might a rational jury have found that Hall, a collector of Golub's work and a sophisticated buyer, could not <u>reasonably</u> rely on Nikolas's provenance representations?  Unlikely as to both, but, still, perhaps.  Accordingly, I cannot find, on this record, that defendants interposed a "patently unreasonable" defense, and so decline to award fees under New Hampshire's bad faith litigation exception to the American Rule.  This case comes close perhaps, but falls "on the non-fee-paying side of the line that separates" weak defenses from patently unreasonable defenses interposed "in bad faith, vexatiously, wantonly, or for oppressive reasons."  <u>Universal Am-Can, Ltd. v. CSI-Concrete</u>

11

Systems, Inc., 2012 WL 579167 * 16 2012 DNH 047 (D.N.H. Feb. 22, 2012) (citations and quotations omitted).

**Conclusion**

Plaintiff's motion for award of attorney's fees (doc. no. 113) is denied.)

**SO ORDERED.**

/s/ Steven J. McAuliffe
Steven J. McAuliffe
United States District Judge

April 22, 2019

cc: Lawrence B. Gormley, Esq.
    Ted Poretz, Esq.
    Jeffrey Christensen, Esq.
    William B. Pribis, Esq.